IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MICHAEL VALENTEEN,**

    **Petitioner,**

v.                                   **CIVIL ACTION NO. 1:08cv89**
                                              **(Judge Keeley)**

**JOE D. DRIVER, Warden,**

    **Respondent.**

**REPORT AND RECOMMENDATION**

## I. BACKGROUND

On March 13, 2008, the *pro se* petitioner, Michael Valenteen, an inmate at USP Hazelton in Bruceton Mills, West Virginia, filed an Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241, in which he seeks an order from this court dismissing or expunging a disciplinary action taken against him while he was housed at USP Canaan, which is located in Waymart, Pennsylvania. On March 24, 2008, the petitioner paid the required $5.00 filing fee. By Order entered on March 25, 2008, the court directed the respondent to show cause why the petition should not be granted. On May 6, 2008, the respondent filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. On May 7, 2008, a Roseboro Notice was issued and on May 23, 2008, the petitioner filed a reply.

## II. FACTS

On April 25, 2007, an Incident Report was prepared charging the petitioner with Code Violation 219, Stealing and Code Violation 305, Possession of Anything Not Authorized. The report

1

indicates that following an SIS Investigation, it was determined that the petitioner had knowingly possessed contraband items which included hardback book covers without any pages attached, glue, and one Ziploc container. The report further indicates that the petitioner admitted stealing the glue from the Recreation Department. The contraband was discovered in Unit F-1, Cell 221 on March, on which date the petitioner was sole occupant of that cell. A copy of the Incident Report was delivered to the petitioner on April 25, 2007 at 2:35 p.m. The investigating officer, Lt. Novak, interviewed the petition in the Special Housing Unit ("SHU"). The petitioner was advised of his rights, and stated that he understood his rights. The petitioner was given a copy of the report, and it was read to him. In response to questioning, the petitioner indicated the report was true, and that he got the glue from the craft area where he worked. He also indicated that he got the Ziploc container from the trash. He refused to answer when asked what the pieces of paper were for. Novak concluded that the Incident Report was true and warranted and referred the matter the Unit Disciplinary Committee ("UDC").

The petitioner appeared at the UDC meeting and stated: "I did have the glue. It was in my property. I got it from working as an art instructor and the glue was given to me by a staff member." Based on repeated offenses, the recentness of a previous incident, and the severity of the alleged violation, the UDC referred the matter to the Disciplinary Hearing Officer ("DHO") with a recommendation that if the petitioner were found guilty, that sanctions include lost of Good Conduct Time, disciplinary segregation, and loss of phone privileges.

The DHO hearing was held on May 1, 2007. The petitioner waived his right to a staff representative . At the onset of the hearing, the petitioner was advised of his rights and elected to make the following statement on his own behalf: "They [sic] was in my locker. It was non-toxic Elmer's Glue given to me by someone in the Recreation Department. I make cards all the time."

2

In addition to the Incident Report and Investigation, the DHO considered the following documents: (1) memorandum dated April 10, 2007 from R. Thomas, Senior Officer Specialist; (2) three photographs, taken March 27, 2007 and April 25, 2007; and (3) memorandum dated April 25, 2007, from Robert Kaszuba, Special Investigative Supervisor. Based on the record, the DHO found that the petitioner had committed the acts as charged. The DHO sanctioned the petitioner for violation of Code 219 as follows: (1) Disallowance of Good Conduct Time 27 days; (2) Impound Property 30 days, expires 5/30/2007, excluding religious and legal material; (3) Disciplinary Segregation 30 days, expires 5/30/2007; Loss of Commissary privileges 6 Months, expires 11/1/07; and (4) Disciplinary Transfer. For the Code 305 violation, the DHO sanctioned the petitioner with: (1) Disciplinary Segregation 15 days, suspended 180 days clear conduct and (2) Loss Telephone Privileges 3 Months, expires 8/1/08. A copy of the DHO report was sent to the petitioner on May 7, 2008.

### III. **CONTENTIONS OF THE PARTIES**

The petitioner alleges that his due process rights were violated because there was "...**NO** independent evidence supporting facts, or evidence supporting a finding of guilt for **stealing** said non-toxic elmers glue." (Doc. 1, p. 4)(emphasis in original). As relief, the petitioner seeks "dismissal/expungement of institution incident report..which [will] automatically restore petitioner's status to that in which he enjoyed prior to implementing sanctions/punishments..." . (Doc. 1, p. 24). The petitioner also seeks reinstatement of 27 days of good time credit, correction of his security level to minimum or medium with transfer to an institution allowing reasonable family ties; reinstatement of UNICOR status; and 85 months longevity which impacts earning capacity. (Doc. 1, p. 25).

In addition to his allegations regarding his disciplinary hearing, and the alleged violation of his due process rights, the petitioner also raises numerous other allegations. Specifically, he claims that his Custody Classification is inaccurate because BOP staff changed his custody classification

3

in retaliation for his filing institutional grievances. In addition, he claims that staff at USP Canaan subjected him to reprisals and penalties for filing grievances and seeking relief from the courts. Finally, he claims that he was treated unfairly in comparison to other inmates in similar circumstances.

The respondent counters that the petitioner has received all the due process required by the Supreme Court as set forth in Wolff v. McDonnell, 418 U.S. 539 (1974). Therefore, the respondent contends the petition should be dismissed with regard to the allegations regarding the disciplinary proceeding. In addition, the respondent argues that the petitioner has failed to exhaust his administrative remedies with respect to his other claim. Moreover, the respondent argues that these additional claims are without merit

In his reply to the response, the petitioner claries that he is not attempting to file a Bivens action, and he simply raised the issue of retaliation, reprisals and unequal treatment "as 'investigative tools' for the court as to determine Mr. Kaszuba's motivations for '_lying_' against petitioner '_ultimately_' resulting in petitioner being found guilty of series #219 - stealing and '_questionable_' sanctions." (Doc. 16, p. 4)(emphasis in original).

## IV. STANDARD OF REVIEW

### A. Motion to Dismiss

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. Walker v. True, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Conley v.

Gibson, 355 U.S. 41, 4506 (1957).

**B. <u>Summary Judgment</u>**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See <u>Blackledge v. Allison</u>, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. <u>Maynard v. Dixon</u>, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. <u>Miller v. Federal Deposit Ins. Corp.</u>, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." <u>Id</u>. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. <u>Anderson</u>, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Industrial Co. V. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 1986).

**V. <u>ANALYSIS</u>**

Prison disciplinary proceedings are not criminal prosecutions, and prisoners do not enjoy "the

5

full panoply of due process rights due a defendant in such [criminal] proceedings. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Where, as here, a prison disciplinary hearing may result in the loss of good time credit, Wolff holds that due process requires the following:

1. giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

2. providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

3. allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4. permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5. providing impartial fact finders.

Id. at 564-571. The information before the Court reveals that the petitioner was provided due process as contemplated by Wolff.

First, the petitioner received written notice of the charges at least 24 hours in advance of the DHO hearing. More particularly, the petitioner received a copy of the incident report on April 25, 2007, and the DHO hearing was on May 1, 2007.

Second, the petitioner was provided a written statement by the DHO as to the evidence relied on and the reasons for the disciplinary action. The DHO report, dated May 7, 2007, notes that the specific evidence relied upon to support the finding that the petitioner committed the prohibited Act of Code 219 and 305 were the reporting officer's statement in the Incident Report and the petitioner's

testimony in response to questioning at the DHO hearing. (Doc. 11-5, pp. 2-3). In addition, the report explains the reason for the disciplinary action. More specifically, the report states that

> "The action or behavior on the part of an inmate to steal anything whether from another inmate, staff member or from an area of the institution creates the potential for conflict between individuals, which interferes with the effective operation of the institution. Stealing can not and will not be tolerated in this environment. Possession of anything which is not authorized, especially glue and other contraband, interferes with staff's ability to account for all inmate property and perform proper shakedowns of the inmate's assigned area. Unauthorized items can be used for illegal purposes, drugs, and/or intoxicants and therefore, cannot and will not be tolerated.
>
> The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his behavior.
>
> The loss of good conduct time, impounding of property, and the period of disciplinary segregation (to include the period of which was suspended) was imposed to demonstrate the seriousness of his actions and as a punishment for his conduct. The loss of commissary and telephone privileges was imposed to deter further behavior, and promote compliance with institution rules and regulations. It is hoped that these sanctions prompt Valenteen to modify his behavior and deter others from engaging in such activities in the future.

(Doc. 11-5, p. 3).

Third, the petitioner was advised of his right to call witnesses and present documentary evidence. The petitioner did not request any witnesses and did not provide any evidence.

Fourth, the petitioner waived his right to a staff representative, and finally, the petitioner was provided an impartial decision-maker. In accordance with BOP regulations, the DHO did not act as the reporting official, investigating officer, UDC member, or witness and did not play a role in referring the charges.[1]

Not only was the petitioner provided all the due process rights required by Wolff, the findings

---

[1] See 28 C.F.R. § 541.16(b).

made by the DHO are sufficient to support the finding that the petitioner violated Prohibited Act Code 219 and 305. The Supreme Court held in Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985) that "[t]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." The Supreme Court further stated:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

In reaching his decision, the DHO considered the SIS Investigation which was concluded on April 25, 2008. In addition, the DHO considered the petitioner's testimony that he obtained the Ziploc bag from the trash, and that he was given the glue by someone in the Recreation Department. However, the DHO also considered the petitioner's refusal to identify that individual because he "didn't want to snitch." (Doc. 5, p.2). The DHO also considered the petitioner's statement that the institution offers glue in the commissary as justification for possessing the glue. However, the DHO contacted the trust fund and perused the commissary list and determined that the only items available for sale are glue sticks. After considering all of the evidence the DHO found that the petitioner had willfully violated code 219, Steal and code 305, Possession of Anything not Authorized.. As previously noted, it is not the Court's prerogative to make an independent assessment of the credibility of the witnesses or weigh the evidence. So long as there is evidence to support the DHO's determination, it must stand. See Superintendent at 455-56. Here, the testimony and documents considered by the DHO clearly provided "some evidence" from which a rational conclusion could be drawn that the petitioner committed the act as charged.

As to the petitioner's claims that his sanctions were extreme, the undersigned notes the BOP

is charged with the responsibility of administering the federal prison system See 18 U.S.C. § 4042. Included in this duty is the obligation to provide for the protection, instruction and **discipline** of all persons charged with or convicted of offenses against the United States. § 4042(a)(3) (emphasis added). Therefore the BOP has promulgated rules for inmate discipline. See 28 C.F.R. § 541.10, et seq., and the authority to administer prison discipline is within the discretion of the BOP. Moreover, even if this Court could review the sanctions imposed in a prison disciplinary proceeding, the undersigned does not believe that they were extreme. First they are within the sanctions authorized by 28 C.F.R. § 541.13. Second, it is apparent from the recommendations from the UDC, that the petitioner had committed violations previous to this. Finally, as the DHO noted, "Possession of anything which is not authorized, especially glue and other contraband, interferes with the staff's ability to account for all inmate property and perform proper shakedowns of the inmate's assigned area. Unauthorized items can be used for illegal purposes, drugs and/or intoxicants and therefore, cannot and will not be tolerated." (Doc. 11-5, p. 3). Clearly, prison rules and regulations are created for safety and security reasons. Therefore, allowing an inmate to circumvent those restrictions without severe recourse would jeopardize the orderly running of the institution.

## VI. MISCELLANEOUS MOTIONS

On May 1, 2008, the plaintiff filed a motion seeking an "injunction for immediate transfer to 'medium' security facility, while this court considered his § 2241 petition." Following receipt of this motion, the petitioner was transferred FCI Butner, a medium custody facility. Accordingly, the petitioner received the relief he requested in his motion filed on May 1, 2008, and the same is thereby moot.

On July 31, 2008, the petitioner filed a motion in which he alleges that he is at FCI Butner as a holdover pending transfer to USP Atwater, which transfer he alleges is retaliatory and will place

his life in danger. Furthermore, the petitioner complains that such a move will place him 3,000 miles from his family. Accordingly, he seeks an order directing the BOP to transfer him to the medium custody facility at Schuylkill, Pennsylvania, or in the alternative, an order that he be allowed to remain at FCU Butner.,

18 U.S.C. §3621(b) provides that "[the Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate..." Furthermore, the transfer of a convicted and sentenced inmate is within the sound discretion of the Bureau of Prisons. Meachum v. Fano, 427 U.S. 215 (1976). Accordingly, this Court does have the authority to order the petitioner's transfer or designation to any specific facility.

## IV. RECOMMENDATION

Based on the foregoing, the undersigned recommends that the petitioner's Motion to Transfer (Doc. 8) be **DISMISSED AS MOOT**, respondent's Motion to Dismiss, and or for Summary Judgement (Doc. 10) be **GRANTED**, the petitioner's §2241 petition be **DENIED and DISMISSED WITH PREJUDICE**, and the petitioner's Motion to Stay Retaliatory Transfer (Doc. 17) be **DENIED**.

Any party may file, within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the

right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to prove a copy to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: September 8, 2008

       /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE